IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANTHONY J. SCHALK,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of<br>Social Security,<br><br>            Defendant. | 3:14-CV-01495-JO<br><br>OPINION AND ORDER |

JONES, J.,

Plaintiff Anthony Schalk appeals the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Schalk filed a social security application under Title II, alleging disability beginning June 30, 2007. Because his insured status under the Social Security Act expired on June 30, 2011, he must show that he was disabled on or before that date to prevail on his claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). Accordingly, the relevant period for this appeal runs from June 2007 through June 2011.

-1-    OPINION AND ORDER

Schalk had an administrative hearing, and the Appeals Council remanded for further evaluation of Schalk's mental impairments. Schalk then appeared and testified at a second administrative hearing on March 4, 2013. The ALJ applied the five-step analysis outlined in the regulations to determine whether Schalk was disabled. Admin. R. 13-26. The ALJ found that Schalk's ability to work was adversely affected by depression, chronic pain, and chronic thoracic strain. Admin. R. 13. The ALJ determined that, despite these impairments, Schalk retained the residual functional capacity ("RFC") to perform a range of light work with occasional climbing, stooping, crawling, crouching, and kneeling. The ALJ stated that Schalk could only perform unskilled and semi-skilled work, and that he could not have any public interaction. Admin. R. 16. The vocational expert ("VE") testified that a person with Schalk's RFC could perform unskilled occupations such as fishing reels assembler, small products assembler, and room cleaner, representing a combined total of 1,347,000 jobs in the national economy. Admin. R. 25. The ALJ concluded that Schalk was not disabled within the meaning of the Social Security Act. Admin. R. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

\\\

## DISCUSSION

### I. Claims of Error

Schalk alleges the ALJ erred by failing to find that multilevel degenerative disc disease, scoliosis and thoracic radiculitis were "severe" impairments. Additionally, Schalk claims the ALJ failed to assess his RFC accurately because he improperly discounted his subjective statements, the statements of his evaluating and treating doctors and physical therapist, and the statements of his wife, brother, mother and father.

### II. Severity Determination

At step two of the sequential evaluation process, the ALJ determined that Schalk had severe impairments of depression, chronic pain, and chronic thoracic strain. Admin. R. 13. Schalk claims that the ALJ failed to list Schalk's degenerative disc disease, scoliosis and thoracic radiculitis as "severe" conditions. However, the ALJ described the objective findings supporting thoracic strain as L4-5 spondylosis, degenerative disc disease, and a very subtle scoliosis of the thoracic spine. Admin. R. 14. Thus, contrary to Schalk's assertion, the ALJ did find these impairments to be severe. He simply listed them as severe under the nomenclature "chronic thoracic strain." Admin. R. 14.

This nomenclature is appropriate, because it is consistent with the diagnoses provided by Schalk's treating physicians. Both Dr. Pierson and Dr. Thomas, for example, gave Schalk a diagnosis of thoracic back strain with persistent chronic back pain. Admin. R. 524, 799, 827. Dr. Rabie diagnosed Schalk with right thoracic spine pain, and Dr. Karty diagnosed Schalk with strain of the lumbar region, chest wall strain, and strain of the thoracic region. Admin. R. 531, 535. Thus, the ALJ properly listed Schalk's physical impairments as chronic pain and chronic thoracic strain.

Moreover, even assuming the ALJ erred in neglecting to list degenerative disc disease, scoliosis and thoracic radiculitis as severe impairments, that error was harmless. When evaluating Schalk's RFC at step four of the analysis, the ALJ discussed a lumbar MRI, which revealed some "degeneration, with spondylosis at L4/5." Admin. R. 17, 573. The ALJ also took into account a thoracic MRI that showed minimal degeneration, and he considered a radiology report that listed mid thoracic radiculitis as a symptom. Additionally, the ALJ noted that a thoracic CT scan showed mild S-shaped scoliosis. Admin. R. 17-18, 511, 670. Thus, the ALJ considered Schalk's degenerative disc disease, scoliosis and radiculitis when evaluating Schalk's RFC at step four of the analysis. Accordingly, any error in not listing these impairments as severe was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding that any error that the ALJ made in failing to list bursitis as a severe impairment was harmless, when the ALJ considered bursitis at step four of the analysis).

### III.    Credibility Determination

In his application papers, Schalk alleged that he was in constant pain as a result of back and chest wall strain and headaches. Admin. R. 16, 324. Schalk testified that he had difficulty remembering and concentrating; he could lift a carton of milk but not his children; and he had to lie down multiple times throughout the day because of the pain. Admin. R. 47, 49, 50. Schalk also stated that he spent much of his day lying down. Admin. R. 324.

The ALJ found that Schalk had medically determinable impairments that could reasonably be expected to produce some of his alleged symptoms. Admin. R. 17. Furthermore, as reflected in the RFC assessment, the ALJ believed that Schalk's pain significantly limited his ability to perform basic work activities such as climbing, stooping, crawling, crouching, kneeling, and interacting with

the public. The ALJ narrowed Schalk's RFC by significantly limiting the amount of time he could be expected to engage in each of these activities. Admin. R. 16.

Because the ALJ found that Schalk had medically determinable impairments that could reasonably be expected to produce some degree of pain and did not identify affirmative evidence of malingering, the ALJ was required to assess the credibility of Schalk's statements about the intensity, persistence, and limiting effects of his impairments. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

The ALJ found less than fully credible Schalk's statements about the severity and limiting effects of his symptoms. Admin. R. 17. An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation of the rationale. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating Schalk's credibility. He found that the objective medical evidence did not

-5-    OPINION AND ORDER

support Schalk's alleged symptoms. Admin. R. 17. For example, on April 9, 2007, Schalk had an appointment with Dr. Pierson. Dr. Pierson found that Schalk experienced "no distress" during a physical examination, and he stated that there were "no objective findings" consistent with Schalk's subjective pain. Admin. R. 524. On November 5, 2009, Schalk had a follow-up visit with Dr. Weller, who described Schalk's condition as an "incongruous circumstance which simply does not fit or provide an explanation for how he could have this degree of persistent pain after the type of injury he had." Admin. R. 696. Dr. Thomas noted that an MRI performed in June 2009 was normal, and an x-ray taken in April of 2011 showed no fracture. Admin. R. 799. Additionally, a CT of the lumbar spine revealed no significant abnormality that could explain Schalk's clinical presentation. Admin. R. 513. Based on these findings, it was reasonable for the ALJ to conclude that the objective medical evidence was not consistent with the debilitating limitations Schalk claimed.[1]

The ALJ also considered Schalk's daily activities. Admin R. 17. Schalk reported a fairly broad range of activity, including taking his children to school, caring for his children, driving, paying bills, doing laundry without folding it, preparing meals and maintaining his hygiene. Admin. R. 47-48, 334, 336, 837. Additionally, in 2009, Schalk stated that he could perform all activities of

---

[1] In a reply brief, Schalk asserts that a lack of objective findings is diagnostic of Schalk's chronic pain syndrome and therefore not an issue of credibility. (#24 at 2-3). I do not need to address this issue because Schalk improperly raised it for the first time in his reply. However, even on the merits, this argument fails. Contrary to Schalk's assertion, the ALJ can use a lack of objective medical evidence to discount the credibility of a claimant with chronic pain syndrome. *See Chaudry v. Astrue*, 688 F.3d 661, 667 (9th Cir. 2012) (finding the ALJ reasonably discounted an opinion about a claimant diagnosed with chronic pain syndrome because it was unsupported by objective medical evidence). Moreover, the ALJ did conclude that Schalk had limitations in excess of the medical findings. For example, the ALJ found that Schalk could only occasionally climb, stoop, crawl, crouch and kneel, even though no objective medical evidence revealed these limitations. Admin. R. 17. Accordingly, the ALJ reasonably accounted for Schalk's diagnosis of chronic pain syndrome.

daily living at a slower pace. Admin. R. 584. These statements support the ALJ's conclusion that Schalk's daily activities were inconsistent with total disability.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Schalk's subjective statements. His reasoning is clear and convincing, and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### IV. Lay Witness Statements

The ALJ considered the testimony and documents submitted by Schalk's family members. At the hearing, Schalk's wife, Deborah, testified that Schalk experienced pain on a daily basis, and that his condition had worsened over time. Deborah also testified that Schalk had several headaches each week, he rarely socialized, and he did very little when she was at home. She stated that she did not attend his medical appointments, because she stayed at home with the children. Admin. R. 24, 53, 57-59.

Schalk's father, James, completed a third party function report in 2009 and again in 2011. In his 2009 function report, James said that Schalk handled his personal care, but did no food preparation, housework, or yardwork, and engaged in almost no socialization. He claimed Schalk could walk a block but then needed to rest, and could sit only fifteen minutes. Admin. R. 22, 344-347. In his 2011 function report, James stated that Schalk got along well with others and occasionally had visitors, and that Schalk cared for his three children, with the help of his wife and other family members. James also stated that Schalk had difficulty following instructions, paying attention, and handling stress, and that Schalk was in a lot of pain. Admin. R. 23, 453-58.

James along with Schalk's brother, Bryan, and his mother, Loretta, completed an attorney-supplied questionnaire. In the attorney-supplied questionnaire, James, Bryan, and Loretta all rated Schalk's impairment of function as "marked" and his socialization as "moderate." James rated Schalk's impairment in activities of daily living as "marked;" while Bryan and Loretta rated Schalk's impairment in activities of daily living as "moderate." Admin. R. 426-28, 434-36, 443-45.

An ALJ must consider the testimony of a lay witness, and must give reasons germane to the witness for discounting the testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not clearly link the reasons to his determination that the lay witness testimony should be discounted, as long as he notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here, the ALJ found that the testimony and documents supplied by family members were generally credible in describing the activities they personally observed. However, he found their statements about Schalk's limitations not fully credible to the extent they were based on Schalk's subjective statements. When an opinion is premised on subjective statements, that opinion is no more reliable than the subjective statements on which it relies. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ can properly disregard an opinion based on subjective statements when the ALJ has already discounted those subjective statements. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989).

The ALJ also found that the attorney-supplied questionnaire filled out by Schalk's mother, brother and father induced lay persons to comment on medical factors that they did not necessarily understand. The ALJ noted that the objective medical evidence and Schalk's daily activities showed fewer limitations than the family members alleged. Admin. R. 23-24.

-8-    OPINION AND ORDER

This reasoning provides an adequate basis for the ALJ's evaluation of the lay witness statements of Schalk's family members. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 512. The ALJ's interpretation of the family members' statements is supported by inferences reasonably drawn from the record, and will not be disturbed. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## V. Medical Opinions

Schalk claims the ALJ erred in discrediting the opinions of Dr. Stephen Thomas, M.D. and Dr. Karen Bates-Smith, Ph.D. An ALJ may discount a treating or examining doctor's opinion that is inconsistent with the opinions of other doctors, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is not contradicted by another doctor, the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). Here, under either standard, the ALJ's evaluation of Dr. Thomas's and Dr. Bates-Smith's opinions is sufficient.

### 1. Dr. Thomas's Opinion

Dr. Thomas completed attorney-supplied questionnaires in November 2011 and in October 2012. In 2011, Dr. Thomas rated Schalk's ability to work during an eight-hour work day at a normal pace as very poor. He stated that Schalk would be able to lift no more than ten pounds, sit less than two hours in an eight-hour work day, and stand and walk less than two hours in an eight-hour work day. Additionally, he anticipated that Schalk would need to lie down approximately six to ten times per day and miss more than four days of work per month. Dr. Thomas wrote that Schalk's limitations impaired his ability to concentrate and pay attention and prevented him from working

since approximately 2009. Admin. R. 18, 828-33. In the 2012 questionnaire, Dr. Thomas stated that Schalk could sit four hours in an eight-hour work day, stand and walk two hours in an eight-hour day, and would likely need to lie down four to five times per day. He opined that Schalk would need to miss more than three days of work per month as a result of his pain, and he indicated that Schalk would need to avoid extreme temperatures. Admin. R. 18, 845-47.

The ALJ gave Dr. Thomas's opinion "little weight" because it was inconsistent with the objective medical evidence. Admin. R. 19. Dr. Thomas first saw Schalk in April of 2011, two months before the date last insured. During that visit, Dr. Thomas observed that Schalk got up easily and walked around fairly well. He stated that Schalk had a normal MRI from June 2009, and he took a lateral film and saw no evidence of fracture. The only significant finding that Dr. Thomas noted was a limited thoracic range of motion. Admin. R. 19, 849, 851. Additionally, Dr. Thomas did not provide any medical evidence to support his opinion that Schalk could lift only ten pounds, stand only two hours of eight, sit only two hours of eight, and miss approximately four days of work each month. Admin. R. 19, 828-33, 845-47. His chart notes did not reflect any evaluation or findings to support limitations in environmental exposure, concentration, or attention. Admin. R. 19, 832, 847, 849-52. Other treating doctors similarly found no objective medical evidence that would support the limitations in Dr. Thomas's opinion. Dr. Weller, for example, described Schalk's condition as an "incongruous circumstance which simply does not fit or provide an explanation for how he could have this degree of persistent pain after the type of injury he had." Admin. R. 696. Dr. Pierson stated in 2007 that Schalk had "no objective findings." Admin. R. 524. Thus, Dr. Thomas did not base his opinions on his or other doctors' objective medical findings during the relevant time frame. An ALJ can reject a physician's opinion that is unsupported by objective

-10-    OPINION AND ORDER

evidence. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

The absence of corroborating objective medical evidence suggests that Dr. Thomas based his opinion on Schalk's subjective complaints. Dr. Thomas's reliance on Schalk's subjective statements is further indicated by Dr. Thomas's lack of contact with him during the relevant time period. Dr. Thomas opined that Schalk had been disabled since 2009, but did not start seeing Schalk until April 2011, when his insured status under the Act was about to expire. "Medical opinions premised on subjective statements are no more reliable than the subjective statements on which they rely." *Tonapetyan*, 242 F.3d at 1149. Because the ALJ reasonably discounted Schalk's credibility, he was free to disregard Dr. Thomas's opinion to the extent it was based on Schalk's subjective complaints.

Finally, the ALJ found that Dr. Thomas did not appear to take into account Schalk's ability to drive, pay his bills, and raise his children when assessing his functionality. Admin. R. 19. The ALJ reasonably concluded that these skills were not indicative of the severe limitations Dr. Thomas alleged.

The ALJ's reasoning in determining the weight to give Dr. Thomas's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. The ALJ's evaluation of Dr. Thomas's opinion must be upheld, even if the record could reasonably be interpreted differently. *Batson,* 359 F.3d at 1193.

### 2. **Dr. Bates-Smith's Opinion**

On September 14, 2012, Dr. Karen Bates-Smith completed a medical source statement. Dr. Bates-Smith listed Schalk's ability to understand and remember complex instructions and make judgments on complex work-related decisions as "moderate;" and she listed Schalk's impairment in his ability to carry out complex instructions as "marked." In terms of social functioning, Dr.

-11-    OPINION AND ORDER

Bates-Smith found that Schalk had "moderate" impairment in his ability to interact appropriately with supervisors and respond to work situations and changes in routine. She wrote that Schalk was not able to work with the public or with co-workers, because he was anhedonic, withdrawn, and had "marked" impairments in those areas; and she stated that Schalk's anhedonia would "markedly" impair his ability to carry out complex instructions on a full-time basis. Admin. R. 841-42.

The ALJ afforded Dr. Bates-Smith's opinion "little weight" because it was inconsistent with the narrative report and the other evidence. Admin. R. 22. Although Dr. Bates-Smith found that Schalk had difficulties in concentration and memory, she noted that Schalk did not give any examples of difficulty. Dr. Bates-Smith's examination revealed only that Schalk would move at a slower pace with complex tasks, not a difficulty understanding complexity; and it suggested that Schalk had average intellectual functioning. Admin. R. 22, 837-38. Additionally, while Dr. Bates-Smith opined that Schalk could not work with the public or with co-workers, her chart notes indicate that he was pleasant and cooperative throughout the examination and that he got along with his parents very well. Admin. R. 836, 838. Schalk's ability to socialize with his family and care for his children further suggests that his impairments were not as marked as Dr. Bates-Smith alleged. Admin. R. 452, 837-38.

Notably, while giving Dr. Bates-Smith's opinion little weight, the ALJ's RFC assessment was largely consistent with the limitations she found. The ALJ restricted Schalk to unskilled and semiskilled work that would not typically require working with complex instructions or tasks. The ALJ also precluded work requiring interactions with the public to accommodate deficits in social functioning. Admin. R. 16. Indeed, the VE identified over a million unskilled jobs in the national economy that do not require complex tasks or contact with the public that would fit Schalk's RFC.

The ALJ also noted that Dr. Bates-Smith examined Schalk in September 2012, fifteen months after his insured status expired. Admin. R. 22. The ALJ is allowed to give less weight to a doctor's opinion when the doctor examined the claimant after the expiration of his disability insured status. *Macri v. Chater,* 93 F.3d 540, 545 (9th Cir. 1996). The ALJ's reasoning in determining the weight to give Dr. Bates-Smith's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. The ALJ's evaluation of Dr. Bates-Smith's opinion must be upheld, even if the record could reasonably be interpreted differently. *Batson,* 359 F.3d at 1193.

### VI. Physical Therapist's statements

Leslie Goldsein, M.S.P.T., provided physical therapy to Schalk on almost a weekly basis beginning in March 2010. In August 2010, she completed an attorney-supplied disability form in support of Schalk's present claim. She stated that Schalk suffered from cervical, thoracic/rib, sacroiliac segmental dysfunction, mid back pain, rib pain, daily headaches, occasional right hip pain, and numbness and pain in the fingers. Admin. R. 20, 682. She opined that Schalk could stand 15-30 minutes at a time before changing position for a total of less than two hours in an eight-hour work day and sit for 15-45 minutes at a time for a total of less than two hours in an eight-hour work day. Goldstein described Schalk's current ability to work full-time as "poor;" and she stated that, according to Schalk's subjective statements, Schalk needed to lie down frequently throughout the day, and had problems with attention and concentration due to headaches. Admin. R. 21, 683, 685.

The ALJ gave Goldstein's opinion "minimal weight." Admin. R. 21. As the ALJ noted, physical therapists are not "acceptable medical sources" within the meaning of the regulations. 20 C.F.R. § 404.1513. The opinions of such sources must be considered, but may be discounted if the

ALJ provides reasons that are germane to the witness for doing so. *Molina,* 674 F.3d at 1111. Even a single reason may suffice. *Valentine,* 574 F.3d at 694.

The ALJ found Goldstein's opinion to be inconsistent with the objective medical evidence. Goldstein said she based her opinion on findings of facet joint impingement, nerve root irritation, lower rib positional fault, and suggestions of Schmorl's node. The ALJ found that none of these defects were shown on CT scans or MRI studies. Additionally, as with the medical opinions, Goldstein based a number of limitations in her opinion on Schalk's subjective statements, which the ALJ found less than fully credible. The ALJ provided adequate reasoning germane to Goldstein for discounting her opinion of Schalk's limitations.

## CONCLUSION

Schalk's assignments of error cannot be sustained. Accordingly, the Commissioner's final decision is AFFIRMED.

DATED this 7th day of December, 2015.

Robert E. Jones, Senior Judge
United States District Court

-14-   OPINION AND ORDER